# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS ALFREDO ORTIZ, | Case No.: 1:17-cv-01611-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Alexis Alfredo Ortiz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DBI") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. Nos. 3, 11, 12.)

1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, the Court affirms the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

On March 20, 2014, Plaintiff filed an application for a period of disability and DBI. AR 196-199.[3] Plaintiff also filed an application for SSI on March 21, 2014. AR 200-206. In both applications, Plaintiff alleged disability beginning January 1, 2012. AR 196, 200. Plaintiff's applications were denied initially and on reconsideration and Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). AR 73-121, 124-153. ALJ Sharon Madsen held a hearing on July 7, 2016, and issued an order denying benefits on September 1, 2016. AR 23-72. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3. This appeal followed.

**Relevant Hearing Testimony**

The ALJ held a hearing on July 7, 2016, in Fresno, California. Plaintiff was incarcerated at the time of the hearing and appeared telephonically. Plaintiff was represented by his attorney, Jonathan Pena. Impartial Vocational Expert Jose Chaparro also appeared. AR 26, 40, 42, 45.

In response to questioning by the ALJ, Plaintiff testified that his birthdate is January 7, 1990, and he is married but has no children. Plaintiff testified that prior to his incarceration he was "kind of homeless" and "bouncing around a lot." He had his driver's license and sometimes drove. Plaintiff has a high school education and completed some college units but did not obtain a degree or certificate. AR 45-47.

When asked about his typical daily activities, Plaintiff testified that he did not shower very often because he did not like to do so. Plaintiff's household chores included feeding his dog. He did not cook but was able to use the microwave. Plaintiff did not like to go grocery shopping and typically did so late at night when there were fewer people present. He sometimes attended church

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

with his mother but did not like to go because he would get nervous while around other people. AR 48-50.

Plaintiff testified that his typical day prior to incarceration included getting up, feeding his dog, and, if he felt like eating and food was available, eating whatever his wife was eating. Plaintiff's wife would brush and style his hair and Plaintiff would get dressed, drink coffee, and attend medical or parole appointments. Plaintiff testified that he did not watch television but enjoyed listening to music and reading, although he did not read for long periods of time because he got headaches, needed glasses, and had difficulty concentrating unless he found the material to be very interesting. When asked about his prior work history, Plaintiff testified that he worked for McDonald's for more than a year on a full-time basis. During that time, Plaintiff did not cashier and mostly worked in the back. He did not like helping the customers because he found them to be rude and mean. AR 50-53.

With respect to his mental impairments, Plaintiff testified that he does not like people and gets overwhelmingly nervous and paranoid around them. Plaintiff's mind races and he sometimes feels like he wants to fight and that others are looking at him strangely, thinking about him, or following him. He additionally testified that he hears voices, experiences suicidal thoughts on an ongoing basis, and sometimes cuts himself. Plaintiff has a history of drug abuse and previously used methamphetamine. Plaintiff was not receiving treatment or medication while incarcerated. Plaintiff was drinking alcohol and smoking marijuana prior to his incarceration but testified that he does not drink or do drugs while he is on medication. Additionally, Plaintiff is a former gang member although he testified that he is no longer affiliated with any gang. AR 53-59.

In response to questioning by his attorney, Plaintiff testified that he has been receiving treatment since he was a child and experiences manic and depressive episodes. Plaintiff described periods of extreme excitement followed by periods of extreme depression during which he was unable to get out of bed for days. According to Plaintiff, he will sometimes go without sleeping for days and then will sleep for weeks. He further described his depressive periods as lasting for more than a month at a time. Plaintiff also testified that he needs reminders to shower and sometimes will go long periods without brushing his teeth or shaving. He additionally needs assistance brushing his hair. AR 60-61, 64.

Plaintiff testified that he was attending and doing well in school prior to his incarceration. Plaintiff's teachers and his wife, who was taking the same classes as him, would help him to attend school and feel comfortable around other students. Plaintiff would sometimes have trouble in school and would need to sit near the back of the class or close to the door. He would occasionally experience difficulty getting out of bed and attending his classes. When Plaintiff was unable to get up and attend his classes, his wife would alert his teachers and get his homework so that he could do it at home. Plaintiff would sometimes be unable to do his work and reported sitting in bed and crying all day and being unable to eat. During this time period, Plaintiff was taking his medications off and on. Plaintiff testified that the dosage of his medications was constantly changing and while his medication helped control his symptoms he still experienced episodes of depression while on medication. Additionally, he frequently got in fights with others and had trouble sitting through a full class period unless he had used marijuana. However, Plaintiff testified that he did not have disciplinary issues and would leave class as soon as instruction ended or he began feeling bad. AR 61-65.

Following Plaintiff's testimony, the ALJ elicited testimony from the Vocational Expert ("VE") Jose L. Chaparro. The VE testified that Plaintiff's work history included sandwich maker. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education, and work background as Plaintiff. This person had no exertional limitations but was restricted to simple, routine tasks and occasional public contact. The VE testified that Plaintiff's past work as performed would be available, although there are sandwich maker jobs with extensive public contact. Additionally, there were other jobs available, including heavy unskilled work as a house cleaner, light unskilled work as a housekeeping cleaner, or medium unskilled work as a laboratory equipment cleaner. AR 67-68.

For the second hypothetical, the ALJ asked the VE to assume that a hypothetical person had no exertional limitations, could perform simple, routine tasks, and could have occasional contact with co-workers and supervisors, meaning the hypothetical person could be in the same building but not working side-by-side with them. The VE testified that the same three other jobs would be available as in the first hypothetical with no reduction in the number of jobs available. AR 68-69.

For the third hypothetical, the ALJ asked the VE to assume that a hypothetical person had no exertional limitations, could perform simple, routine tasks, and would require no contact with the public, co-workers, or supervisors. The VE testified there would be no work available. For the fourth hypothetical, the ALJ asked the VE to assume that a hypothetical person had no exertional limitations, could perform simple, routine tasks, and occasional contact with the public, co-workers, and supervisors, but would be off-task approximately 15 percent of the time due to difficulty concentrating. The VE testified that there would be no work available. AR 69.

Finally, Plaintiff's attorney asked the VE hypothetical questions. Plaintiff's attorney asked the VE to assume a hypothetical individual with no exertional limitations who could perform simple, routine tasks and have occasional contact with the public and co-workers but would require additional supervision 15 percent or more of the time for reminders and instructions on how to preform duties or complete tasks or the work would cease. The VE testified that there would be no work available. AR 69-70.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to the Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 26-34. Specifically, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2012 and had not engaged in any substantial gainful activity since January 1, 2012, his alleged onset date. AR 28. Further, the ALJ identified schizoaffective disorder, amphetamine dependence, alcohol dependence, and polysubstance dependence as severe impairments. AR 28-29. Nonetheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 29-30. Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with limitations on his ability to perform simple, routine work and could have occasional contact with the public, coworkers, and supervisors,

meaning he can be in the same building with them but cannot work side-by-side with them. AR 30-33. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 33-34. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 34.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**[4]

Plaintiff contends that the ALJ's findings regarding Plaintiff's mental RFC are not supported by substantial evidence. (Doc. No. 19 at 6-12.) Specifically, Plaintiff asserts that the ALJ erred in evaluating Plaintiff's medical records that were not considered by consultative examiner Mary Lewis, Psy.D, or state agency psychological consultants Timothy Schumacher, Ph.D. and H. Thomas Unger, M.D. without the help of a medical expert. (Doc. No. 19 at 7, 10-12.) Plaintiff asserts that the ALJ had a duty to develop the record if the evidence was ambiguous or inadequate and failed to do so here by not requesting a medical expert to evaluate Plaintiff's more recent treatment records. (Doc. No. 19 at 10.)

**A. The ALJ Properly Evaluated the Medical Evidence**

Plaintiff first argues that the ALJ erred by "evaluat[ing] the bulk of the medical records without the help of a medical expert" because "[t]he ALJ is not a medical expert and may not properly rely on its own lay understanding to interpret medical records to gauge the functional severity of [Plaintiff's] impairments." (Doc. No. 19 at 10.) According to Plaintiff, "the ALJ should not have translated the medical evidence in this case to interpret [Plaintiff's] residual functional capacity." (*Id.*)

In opposition, the Commissioner argues that the RFC is not a medical finding, but an administrative finding, and ALJs have wide discretion to weigh medical evidence, including opinion evidence. (Doc. No. 24 at 3-4.) Contrary to Plaintiff's assertions, "the ALJ is specifically tasked with evaluating medical evidence in assessing a claimant's RFC" and the cases cited by Plaintiff in support of his arguments are inapposite. (Doc. No. 24 at 3-4.) Moreover, Plaintiff has failed to specify how and why the RFC finding is not supported by substantial evidence and what alternative RFC finding the ALJ should have made. (Doc. No. 24 at 5.) The Court agrees.

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

Despite a recitation of certain medical evidence, Plaintiff does not identify any objective medical evidence that the ALJ failed to consider or cite to any objective medical or opinion evidence that is inconsistent with the ALJ's RFC.  (Doc. No. 19 at 3.)  While Plaintiff is correct that an RFC requires evidentiary support and an ALJ may not go outside the record to make his or her own independent medical findings or arbitrarily substitute his or her own judgment for a competent medical opinion, Plaintiff does not identify any such errors in the ALJ's decision.  (*See id.*)  See also *Tackett v. Apfel,* 180 F.3d 1094, 1102 (9th Cir. 1999); *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

The determination of a claimant's RFC is wholly within the province of the ALJ. *See* 20 C.F.R. § 404.1546(c); SSR 96-8p.  The RFC assessment is based on all the evidence in the record, and it is the ALJ's duty to consider and weigh that evidence.  *See* 20 C.F.R. 404.1545(a)(1); SSR 96-8p.  Despite Plaintiff's failure to identify specific error, the Court finds that the ALJ properly considered the medical evidence spanning 2011 through 2016 as well as the remaining evidence in the record. AR 31-33.  The ALJ 's analysis considered all of Plaintiff's reported symptoms and the extent to which the symptoms were reasonable consistent with the objective medical evidence and other evidence in the record, including Plaintiff's testimony and reports of his symptoms and typical activities.  In reaching her decision, the ALJ acted appropriately within her responsibility to determine Plaintiff's RFC from the administrative record as a whole.  For example, with respect to Plaintiff's contact with the public, coworkers, and supervisors, the ALJ considered evidence that Plaintiff was attending classes and doing well prior to incarceration and was able to function when seeking treatment and compliant with treatment.  AR 30-31, 61, 64-65.  The ALJ further noted that Plaintiff's GAF scores ranged from 30-65, "usually depending on his medication compliance or sobriety" and these opinions were given little weight because the lower scores were obtained during short episodes of decompensation while Plaintiff was incarcerated, when the record indicated Plaintiff sought and used drugs and had poor medical compliance.  AR 31.  Mary Lewis, Psy.D., consultatively examined Plaintiff and opined that he was not significantly impaired in any work-related mental functioning. AR 32.  The ALJ considered Dr. Lewis' report and gave it some weight but found that Plaintiff's treatment record as a whole indicating suicide attempts and ideation, intermittent substance abuse, and

8

problems with treatment compliance warranted some mental limitations on contact with others and complex tasks. *Id.* The ALJ additionally considered the opinions of state agency psychological consultants Timothy Schumacher, Ph.D. and H. Thomas Unger, M.D., who opined that Plaintiff had mild restrictions in his activities of daily living, social function, and concentration, persistence and pace, and no extended periods of decompensation. AR 33. The ALJ found that the record supported greater restrictions to simple routine tasks and limited contact with others. *Id.* Plaintiff does not cite any specific evidence which contradicts the ALJ's findings.

In light of the foregoing, the Court finds that the ALJ did not err in her evaluation of the medical evidence in determining Plaintiff's RFC.

## B. The ALJ Did Not Err in Failing to Request a Medical Expert

Plaintiff further argues that the ALJ failed to adhere to her duty to fully and fairly develop the record by not requesting a medical expert in this case because Plaintiff's "more recent medical evidence" was not available at the time of the state agency psychological consultant Dr. Unger's review of the record. (Doc. No. 19 at 10-12.) The Commissioner, in turn, contends that the state agency physicians reviewed the medical evidence pertinent to the relevant period and Plaintiff's "more recent records" do not contradict the ALJ's RFC findings. (Doc. No. 24 at 7-8.) Moreover, according to the Commissioner, the record was neither incomplete nor ambiguous and the Plaintiff's mere disagreement with the ALJ's interpretation of the medical evidence does not amount to error. (*Id.* at 8.)

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Further, an ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

9

The record indicates that, on July 30, 2014, Dr. Schumacher reviewed the record and noted that no medical records had been provided but considered Dr. Lewis' report, which had found normal cognitive functioning and no evidence of mental symptomatology. AR 89. Dr. Schumacher opined that Plaintiff's mental impairment was nonsevere. *Id.* On October 7, 2014, Dr. Unger performed a review of records through September 2014 and likewise opined that Plaintiff's mental impairment was nonsevere. AR 112-115. Dr. Unger did not make any residual functional capacity assessments. AR 115. The ALJ considered the opinions of Drs. Schumacher and Unger but found that the record supported restrictions to simple, routine tasks with limited contact with others. AR 33.

Plaintiff argues that the ALJ erred by failing to obtain additional medical source opinions. However, Plaintiff failed to submit any medical opinions from a treating or examining physician as to his ability to work or his functional limitations. The burden is on the claimant to establish disability. *Terry,* 903 F.2d at 1275. Because it is the Plaintiff's burden to present evidence of disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.2005); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are … disabled….").

Plaintiff contends that the record is "unclear and ambiguous concerning whether Dr. Unger reviewed any evidence concerning [Plaintiff's] borderline disorder." (Doc. No. 19 at 11.) Furthermore, neither Dr. Unger's opinion nor the ALJ's decision describe Plaintiff as impulsive, despite the fact that Plaintiff's providers specifically described him as such on more than one occasion, thus Plaintiff contends that the record is "inadequate and ambiguous" as it relates to his RFC. (*Id.* at 12.) However, the ALJ did not selectively analyze the evidence and she was not required to discuss every piece of evidence or descriptor of Plaintiff's conduct. *Howard ex rel. Wolff v. Barnhartt,* 341

10

F.3d 1006, 1012 (9th Cir. 2003). Moreover, the ALJ considered not only the opinions of the state agency physicians, but also evaluated the objective medical evidence pertaining to Plaintiff's mental impairments post-dating Dr. Unger's opinion. Although the ALJ considered the state agency physicians' opinions, those opinions were not dispositive and the ALJ ultimately formulated an RFC that included additional limitations. AR 33. These additional limitations were based on the record as a whole and accounted for Plaintiff's mental impairments by restricting him to simple, routine tasks and limiting his contact with others. AR 30, 33. As discussed above, the ALJ's consideration of the medical evidence post-dating Dr. Unger's opinion was within her province in determining Plaintiff's RFC. Furthermore, Plaintiff's suggestion that the medical records post-dating Dr. Unger's review would have changed his opinion is mere speculation and not persuasive.

Plaintiff's suggestion that the ALJ had a duty to further develop the record as a result of the existence of medical records post-dating Dr. Unger's review is likewise unpersuasive. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff has not demonstrated that the record was otherwise ambiguous or inadequate to allow for proper evaluation. The mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record. The ALJ summarized record evidence spanning from 2011 through 2016 and found with the support of that record that Plaintiff had not established he was disabled. AR 30-33. Notably, Plaintiff's summary of the medical evidence post-dating the state agency physicians' opinions is consistent with the evidence that the ALJ's summary of the evidence considered in determining Plaintiff's RFC. (*See* Doc. No. 19 at 7-9.) AR 31-33. The record contained what appears to be Plaintiff's complete treatment records, which supported the ALJ's findings and did not present an ambiguity or inadequacy. Indeed, the Court notes that at the hearing, the ALJ asked Plaintiff's attorney if there was any additional evidence and he responded that there was none. AR 43. (*Id.* at 12.) Under these circumstances, the Court finds that the ALJ was not obligated to further develop the record as Plaintiff suggests.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Alexis Alfredo Ortiz.

IT IS SO ORDERED.

Dated: **September 10, 2019**     /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE